UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: ) | Case No. 14-51862 |
| ) | |
| Joseph D. Romaniello, ) | Chapter 11 |
| ) | |
| Debtor ) | November 30~~15~~, 2016 |

## ~~THIRD~~FOURTH AMENDED PLAN OF REORGANIZATION

Joseph D. Romaniello ("Debtor"), proposes the following ~~Third~~Fourth Amended Plan of Reorganization ("Plan"), to his creditors pursuant to §1121(a) of Chapter 11 of the Bankruptcy Code (11 U.S.C. §101 et. seq.).

## ARTICLE ONE
## DEFINITIONS

**1.**     **Code:**  Code shall mean the Bankruptcy Reform Act of 1978 which has been codified as Title 11 of the United States Code.

**2.**     **Confirmation:**  Confirmation shall mean the date on which this Plan is confirmed by Order of the Court.

**3.**     **Court:**  Court shall mean the United States Bankruptcy Court for the District of Connecticut including the United States Bankruptcy Judge presiding therein.

**4.**     **Effective Date of the Plan:**  Effective Date of the Plan shall mean the first business day following the last day on which an appeal from an Order of the Court confirming this Plan may be taken under applicable law and no such appeal has been taken or if such an appeal has been taken, the first business day following the date upon which such appeal has been exhausted and the Plan may Proceed.

**5.**     **Date of Confirmation of the Plan:**  Date of Confirmation of the Plan shall mean that date upon which the Court approves the Debtor's plan.

## ARTICLE TWO
## CLASSIFICATION OF CLAIMS AND INTERESTS

**1.**     **Administrative Claims as defined in Section 503(b) of the Code**

These claims include the claims of the Debtor's bankruptcy counsel, Zeldes, Needle & Cooper, P.C., whose total is estimated to be $100,000 as of June 30, 2016.  Court approval of the allowance of all of the above claims is required.  These claims will be paid in full on the sooner of their

allowance or confirmation of the Plan. Any entity herein may elect to receive payment over a period of time or a different treatment.

2. **Priority Claims - Priority Claims under 507(a)(8) of the Code**

These are the claims for income taxes by the Internal Revenue Service and the State of Connecticut, Department of Revenue Services as well as any real estate taxes due any municipality in which the Debtor owns real property.  There are no known claims at this time.

3. **Secured Claims**

A. **Secured Claim - Class 1** – consists of Wells Fargo, N.A. which has a fully secured mortgage on 457 Pepper Ridge Road, Stamford, Connecticut in the approximate amount of $164,000 as of July 1, 2016.

B. **Class 2** – Consists of Wells Fargo, N.A. which has a fully secured mortgage on 15 Taff Avenue, Stamford, Connecticut, a multi-family house, in the current amount of $313,000.

4. **General Unsecured Claims**

A. **Class 3 – General Unsecured Claim – Third Party Payor** consists of the First County Bank (the "Bank") which has a fully secured mortgage on 20 Lafayette Street, Stamford, Connecticut owned by Romaniello Industries in the approximate amount of $988,000 as of June 8, 2016.  The Bank is fully secured, but on the real estate owned by Romaniello Industries, not the Debtor.  Debtor owns one hundred (100%) percent of Romaniello Industries and is a guarantor of all obligations due to the Bank.  As such, the Debtor has separately classified the Bank as an unsecured creditor as it is vis-à-vis the Debtor.  The Bank and the Debtor agree to the treatment described hereinafter, which includes the Debtor posting his home located at 457 Pepper Ridge Road, Stamford, Connecticut and granting an additional cross-collateralization mortgage in the amount of $300,000.–;

B. **Class 4 – General Unsecured Claim** – Third Party Payor  - consists of the Small Business Administration (the "SBA") which has a fully secured second mortgage in the approximate amount of $575,000 as of July 1, 2016.  The SBA is fully secured but on the real estate owned by Romaniello Industries, not the Debtor.  Debtor owns one hundred (100%) percent of Romaniello Industries and is a guarantor of all obligations due to the SBA.  As such, the Debtor has separately

2

classified the SBA as an unsecured creditor as it is vis-à-vis the Debtor.  The Debtor agrees to the treatment described herein, which includes the further obligation by Debtor to pay this obligation should Romaniello Industries fail to pay.

      **C.**      Class 5 – **General Unsecured Claims** - consists of general unsecured claims in the total amount of $20,802.72 (Rocky Genovese - $20,000, CL&P - $373.76 and Yankee Gas - $428.96).

      **5.**      **Class 6 - Equity Interest of Debtor**

The Debtor will continue to own his equity in the assets of the estate.  Upon confirmation, all property shall re-vest in the Debtor subject to the liens of record and the terms and conditions of the Plan.

## ARTICLE THREE
## TREATMENT OF CLASSES AND INTERESTS NOT IMPAIRED UNDER THE PLAN

    **1.**    **Administrative Claims.**

Administrative claims shall be paid in full upon the Effective Date of this Plan or as otherwise provided herein or upon allowance by the court, whichever is later.  Any entity herein may elect to receive payment over a period of time or a different treatment.

    **2.**    **Priority Claims.**

None.

    **3**    **Secured Claim - Class 1 – Wells Fargo Bank, N.A.-Approximate Amount $164,000.**

As to Class 3, the Debtor will continue to pay the allowed fully secured creditor in full in accordance with its note and mortgage and the terms therein.  To the extent that the lender is already escrowing for taxes and insurance and Debtor has paid the same with the monthly mortgage payments, this will continue under the Plan, otherwise taxes and insurance will be paid as they become due.  The secured creditor shall retain its lien.   This claim is current.  Upon default of the underlying loan terms and or upon confirmation, whichever occurs first, the automatic stay under section 362 of Code shall no be applicable so that lender may proceed with its default rights against Debtor without further order of this Court.  Class 3 is unimpaired.  *See* **Exhibit A** attached hereto and made a part hereof.

4. **Owner of the Equity – Class 6**

The Debtor will continue to own his equity in the assets of the estate. Upon confirmation, all property shall revest in the Debtor subject to the liens of record and the terms and conditions of the Plan. *See* **Exhibit A**.

5. **U.S. Trustee Fee -** All moneys due the U. S. Trustee pursuant to 28 USC 1930 will be paid on the Effective Date of the Plan and payments will continue until the entry of a final decree. *See* **Exhibit A**.

6. **Objections To Claims** - Objections to claims shall be filed with the Bankruptcy Court <ins>on or before November 30, 2016</ins><del>by the Effective Date of confirmation</del> or later as allowed by the Court and served upon the holder of each Claim to which the Debtor objected.

## ARTICLE FOUR
## TREATMENT OF CLASSES AND INTERESTS IMPAIRED UNDER THE PLAN

1. **Secured Claims - Impaired**

    A. **Secured Claim – Class 2**

    Approximate amount of claim is $313,000. Treatment of the allowed secured claim of Wells Fargo, N.A. shall be paid in accordance with the current monthly payments due to Wells Fargo, N.A. Wells Fargo, N.A. shall retain its lien on 15 Taff Avenue, Stamford, Connecticut to the same effect, validity and priority such lien has as of the Petition Date as set forth in this paragraph. Arrearages <ins>totaling $24,330.32 as of October 31, 2016 shall be repaid over a period of twelve (12) months together with 5.25% interest in equal monthly installments of $2,085.65. In the event any additional arrearages become due up to and including the date of confirmation, said additional arrearages shall be repaid according to this repayment schedule.</ins><del>, if any, shall be brought current within one year.</del> To the extent that the lender is already escrowing for taxes and insurance and Debtor has paid the same with the monthly mortgage payments, this will continue under the Plan, otherwise taxes and insurance shall be paid as they become due. Upon default of the underlying loan terms and or upon confirmation, whichever occurs first, the automatic stay under section 362 of Code shall no be applicable so that lender may proceed with its default rights against Debtor without further order of this Court. This claim is impaired. *See* **Exhibit A**.

2. **General Unsecured –**

    A. **Class 3 -First County Bank**

4

Amount due as of November 1, 2016 is $972,460.83.

Treatment:  The allowed claim of the Bank shall be paid in accordance with the current monthly payments prior to default over five (5) years, which payments shall commence on the Effective Date.  As of the Effective Date, each monthly payment shall be in the amount of $7,485.94, which amount may be modified pursuant to the terms of the note and which amount includes an escrow for real property tax payments.  The Bank further shall have the right to require that future monthly payments include a payment for escrowed property insurance.  In addition, on the Effective Date, the Bank shall be paid $75,000.00 from the proceeds on hand.  The Bank shall retain its lien on 20 Lafayette Street, Stamford, Connecticut (the "Lafayette Property") to full extent, validity and priority such lien had as of the Petition Date to secure all payments due by Debtor to the Bank.  In addition, to further secure the payments due by Debtor to the Bank, the Debtor and his spouse shall grant to the Bank a mortgage in the amount of three hundred thousand dollars ($300,000.00) on their residence at 457 Pepper Ridge Road, Stamford, Connecticut, which mortgage deed will be executed prior to confirmation and may be recorded on or after the Effective Date.  At the end of, or prior to the end of, the period of five (5) years following the Effective Date, the Debtor shall sell or refinance the Lafayette Property and satisfy its obligations to the Bank in full.  If not paid as part of a monthly payment, the Debtor shall pay all property insurance payments as they become due.  This claim is impaired.

Notwithstanding the foregoing and any other provision of the Plan, the Debtor acknowledges, for the avoidance of any doubt, that following confirmation of the Plan, the Debtor's failure to make any payments when due to the Bank, or its failure to make taxes and insurance payments when and as due, shall entitled the Bank to pursue all of its contract, statutory, and common law rights with respect to the Debtor and all obligations owed by him to the Bank.  The Debtor personally and on behalf of Romaniello Industries, LLC; Eastcoast Towing, Ltd.; and Lafayette Auto Group, Inc. hereby reaffirms and fully acknowledges the validity, enforceability, and priority of all of the obligations and undertakings set forth in: the Mortgage Note dated January 13, 2009 between Romaniello Industries, LLC and the Bank in the original principal amount of $770,400.00; the Mortgage Deed dated January 13, 2009 and recorded in Volume 9508 page 303 of the City of Stamford Land Records; the Guaranty dated January 13, 2009 signed by Joseph Romaniello on behalf of Eastcoast Towing, Ltd.; the Guaranty dated January 13, 2009 signed by Joseph Romaniello on behalf of Lafayette Auto Group, Inc.; the Guaranty dated January 13, 2009 signed by Joseph Romaniello; the Guaranty dated January 13, 2009 signed by Katherine Romaniello; and the Assignment of Leases and Rentals dated January 13, 2009 recorded on January 14, 2009 in Volume 9508 page 317 of the City of Stamford Land Records.  The Debtor agrees and hereby

stipulates that no defenses, counterclaims, or setoffs exist with respect to any of the aforementioned instruments nor with respect to any of the obligations and undertakings set forth therein. The Debtor further agrees and stipulates that the amount due to the Bank as of November 1, 2016 is $972,460.83 which is comprised of the following agreed-upon components: principal of $708,786.36; interest from 7/1/2013 to 9/17/2013, at 6.5%, of $10,110.04; interest from 9/18/13 to 11/1/2016 at 6.5% of $145,891.86; late charges of $600; escrow balance of $ 82,603.02; and attorneys' fees of $24,469.55).

      **B.**      **Class 4 - The SBA**

Approximate amount of claim as to June 1, 2015 is $575,000. This Class is not a secured debt of Debtor, but is a debt guaranteed by Debtor. This Class will be paid by a related third party as follows: SBA shall be paid in accordance with the current monthly payments prior to default over a five (5) year period which payments shall commence on the Effective Date. The SBA shall be paid $25,000.00 from proceeds on hand in addition to the monthly payment. The SBA shall retain its lien on Lafayette Street to the same extent, validity and priority such lien had as the Petition Date to secure the payment as set forth in this paragraph. At the end of or prior to said five (5) year period, the property located at 20 Lafayette Street and shall be sold or refinanced satisfy the obligation in full. Taxes and insurance shall be paid as they become due. This claim is impaired This claim is impaired. *See* **Exhibits A & B**.

      **C.**      **Class 5 – Remaining Unsecured Claims**

As to Class 5, the Debtor will pay all allowed unsecured claims in full within sixty (60) days of the Effective Date of Confirmation. The creditors shall receive interest at the United States District Court judgment rate which is fixed on the Effective Date.[1] *See* **Exhibit A**.

    **3.**    **Claim Equity Holder – Class 6**

Joseph D. Romaniello shall retain all equity.

**ARTICLE FIVE**
**FINANCIAL INFORMATION**

  **1. Executory Contracts**

All executory contracts not specifically rejected in the Plan or objected to prior to confirmation shall be assumed by the confirmation of the Plan.

---

[1] Former unsecured creditor Chase has an unsecured debt of approximately $5,000, which was paid in full by Kathy Romaniello.

6

### B. **Debtor's Income**

Debtor Joseph D. Romaniello's personal annual income is estimated to be $104,000 gross, $73,279 net. Debtor's estimated income amount is predicated the accountant's analysis of Debtor's historical income. Such amount may have a downward departure when viewed against certain past MOR's, but the same is consistent with Debtor's accountant's projections based on historical income information. *See* **Exhibit A**.

### ARTICLE SIX
### MEANS FOR THE EXECUTION OF THE PLAN

1. **Means for the Execution of the Plan**

   A. **Sources of Cash for Plan Distributions**

The payments required under the Plan will be made from the Debtor's income, cash on hand and with respect to Lafayette Street, the leasing of the property to an unrelated third party for one-third of the space and from the Debtor's related corporations which proceeds shall be enough generated by the Debtor to make the payments in accordance with the treatment of each of the secured creditors. *See* **Exhibit A** and **Exhibit B**.

The property located at 20 Lafayette Street, Stamford, Connecticut, which is encumbered by First County Bank and an SBA loan is divided into two sections which square footage is roughly equivalent to two-thirds and one-third. The Debtor will lease the property located in the one-third section for approximately $3,000 to $3,500 per month. The Debtor has several interested parties and should be entering into a commitment to lease on or before September 1, 2016.

Romaniello agrees, as a contractually bound party to the Plan, to fund the amount of any shortfalls to First County Bank and the SBA within thirty (30) days of the payment due date in question provided that the shortfall, if any, will not exceed one (1) month's payment. Romaniello will fund the shortfalls out of personal funds.

Thereafter, the remaining proceeds necessary to service the first and second mortgage will be paid from the rental income obtained from East Coast Towing and Lafayette Auto Group. In accordance with projections described in **Exhibit B** affixed hereto and made a part hereof, the Debtor indicates that he has the ability to pay the ongoing $8,000 per month from his business operations in order to service the

indebtedness. In the event of a rental shortfall during the term of the Plan, the Debtor will provide cash payments sufficient to cover any such shortfall and maintain the payments contemplated in the Plan.

2.  The payments to be made to Wells Fargo Bank for the first mortgage on 457 Pepper Ridge Road, Stamford, Connecticut will be made as they have been throughout on a current basis from income generated by the Debtor and his wife. *See* **Exhibit A.**

3.  The payments to be made to Wells Fargo Bank, N.A. on 15 Taff Avenue, Stamford, Connecticut, will be made as they have been throughout on a current basis from income generated by the property. Arrearages will be made up on or before the first anniversary of the Effective Date. *See* **Exhibit B, Schedule 1**.

### B. Management After the Effective Date

From and after the Effective Date the Reorganized Debtor shall continue to perform the management responsibilities of the Debtor.

### C. Liquidation Analysis

**Exhibit B, Schedule 1** sets for the liquidation analysis. The liquidation analysis indicates that the Debtor has sufficient assets to pay all creditors in full. The liquidation analysis further indicates that there is sufficient equity in both the home located at 457 Pepper Ridge Road, Stamford, Connecticut and other related entities owned by the Debtor. *See* **Exhibit B, ¶1**.

### D. Profit History and Projection

The Debtor plans to make payments to creditors from (i) rental proceeds of the Lafayette Street property and Taff Property and (ii) the operations of Debtor's business and his income. The Debtor reasonably expects that sufficient revenue will be generated by cash flow from the two companies he owns in order for the Debtor to make the required payments under the Plan and that the Plan as proposed is in the best interests of its creditors. The attainment of the objective of providing unsecured creditors with value that is not less than what would be received in a liquidation is therefore dependent on the Debtor's future profitability.

## ARTICLE SEVEN
## GENERAL PROVISIONS

1.  **Payment on Effective Date.** No payments under this Plan will be made under the Plan to Claimants until an Order confirming this Plan has become a Final Order.

2. **Payments on Business Days.**  Whenever a distribution hereunder is required to be made on a day other than a Business Day, such distribution shall be made on the first Business Day immediately following, without interest.

3. **Objections to Claims and Motions to Subordinate Claims.**

   a. As soon as practical, objections to Claims, if not made prior to confirmation, shall be filed with the Bankruptcy Court and served upon the holder of each Claim to which the Debtor objected.

   b. Unless otherwise ordered by the Bankruptcy Court, the Debtor may litigate to judgment, settle or withdraw objections to Claims or motions to subordinate claims.

   c. Distribution with respect to and on account of Claims to which the Debtor has objected to shall be made without interest, when an Order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order.

4. **Fractional Cents.**  Any other provision of this Plan to the contrary notwithstanding, no payments of fractions of cents will be made.  Whenever a payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding off of such fraction to the nearest whole cent (rounding down in the case of .5).

5. **Setoffs**.  The Debtor may, but shall not be required to set off against any Claim, the payments to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever Debtor may have against the Claimant, but neither the failure to do so nor the allowance of a Claim hereunder shall be paid until such Disputed Claim shall become an Allowed Claim.  No holder of a Disputed Claim shall be entitled to any interest on the moneys reserved with respect to such Claim.

6. **Disputed Payments**.  In the event of any dispute between and among Claimants (including the Person or Persons asserting the right to receive the disputed payment) as to the right of any Person to receive or retain any payment to be made to such Person under this Plan, the Debtor shall, in lieu of making such payment to such Person, make it instead into an escrow account, for payment as ordered by a Court of competent jurisdiction or as the parties to such dispute may otherwise agree among themselves.

7. **Vesting.**  After Confirmation, the property of the Estate shall be free and clear of all Claims of creditors of the Debtor, except as otherwise provided in this Plan.  All property of the Estate shall become the property of the Debtor.

8. **Cash Payments**.  If any Person entitled to receive a cash payment under this Plan cannot be located on or before the Effective Date of the Plan, such cash shall be set aside and held in trust in a segregated, interest-bearing account to be maintained by the Debtor.  If such Person is located within one

year of the Effective Date, such cash, together with any interest earned thereon held by the Debtor with respect to such payment, shall be paid or distributed to such Person. If such Person cannot be located within one year after the Effective Date, any such cash and accrued interest thereon shall become the property of the Debtor pursuant to 11 USC §347(b), **provided, however** that nothing contained in this Plan shall require the Debtor to attempt anything other than reasonable efforts to locate such person.

9. **Notices.** All notices, requests or demands in connection with this Plan shall be in writing and shall be deemed to have been given when received, or if mailed, five days after the date of mailing provided such writing shall be sent by registered or certified mail, postage prepaid, return receipt requested, and if sent to the Debtor addressed to:

> James G. Verrillo, Esq.
> Zeldes, Needle & Cooper
> 1000 Lafayette Boulevard
> Bridgeport, CT 06604

10. **Headings**. The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner effect the provisions of this Plan.

11. **Severability.** Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or effect the enforceability and operative effect of any and all other provisions of this Plan.

12. **Governing Law**. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with, the internal laws of the State of Connecticut.

13. **Successors and Assigns.** The rights and obligations of any person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of the successors and assigns of such Person.

14. **Effect of Payment of Secured.** To the extent the Plan provides for payment(s) in satisfaction of the default in any allowed secured claim secured by mortgage or security or possessory interest and such payments are made in full consummation of the Plan, said claimant, at the request of the Debtor, shall execute any documents or perform any reasonable act to release or assign said mortgage or security or possessory interest pursuant to the terms of the plan. Upon the conclusion of payments under the Plan, said pre-petition default of payments on any allowed secured claim shall be cured and any acceleration of debt shall be void and of no effect. In addition, to the extent the plan is confirmed and there is pending any foreclosure or other action seeking possession of property of the

Debtor by a secured creditor treated in the confirmed plan, that creditor shall have an affirmative duty to withdraw the action without prejudice to reinstitute it upon default by the Debtor.

## ARTICLE EIGHT
## RETENTION OF JURISDICTION BY THE COURT

The Court will retain jurisdiction until payments under this Plan have been fully made, notwithstanding substantial consummation of the plan, including but not limited to the following purposes:

a) The classification of the claim of any creditor and the re-examination of claims which have been allowed for purposes of voting, and the determination of such objects as may be filed for creditors' claims. The failure by the Debtor to object to any claim before confirmation shall not be a waiver of the Debtor's right to object to or re-examine the claim in whole or in part.

b) The determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between the debtor and any other party including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code.

c) The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan.

d) The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

e) The enforcement and interpretation of the terms and conditions of this Plan.

f) The entry of any order, including injunctions, necessary to enforce the title, rights, and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

g) The entry of an order concluding and terminating this cause, subject only to retention of jurisdiction to enter a discharge order meeting the requirements of §1141(d)(5)(A).

h) Upon completion of his payments required under thePlan, the Debtor will seek an order from the Court as provided in §1141(d)(5)(A), discharging him of his debts treated in the Plan pursuant to §1141(d)(1)(A).

# ARTICLE NINE
# MODIFICATION OF THE PLAN

The Debtor may propose amendments or modifications of this Plan after confirmation, notwithstanding the fact that the Plan may be substantially consummated. The Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Order of Confirmation, in such manner as may be necessary to carry out the purposes and effect of this Plan.

THE DEBTOR

//s//
Joseph D. Romaniello


By: //s//
James G. Verrillo CT 08819

Zeldes, Needle & Cooper, P.C.
P.O. Box 1740
1000 Lafayette Blvd.
Bridgeport, CT. 06601-1740
Tel: (203)332-5733
Fax: (203)333-1489
Email: jverrillo@znclaw.com